Cupp, J.
{¶ 1} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, this court held some sections and provisions of Ohio’s sentencing statutes unconstitutional based on the decisions of the United States Supreme Court in Blakely v. *2 Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, and Apprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435.
{¶ 2} Among the provisions held unconstitutional in Foster were those requiring a trial judge to make certain findings prior to imposing consecutive sentences, R.C. 2929.14(E)(4), and creating presumptively concurrent terms, R.C. 2929.41(A). To remedy this constitutional defect, these provisions were severed from the remaining, valid portions of the statutory sentencing framework. After the decision in Foster, trial judges who imposed consecutive sentences did not need to apply the provisions severed by Foster but instead were to apply the law that was displaced by the enactment of the severed provisions. The trial court in this case, as allowed by our decision in Foster, imposed consecutive sentences without making factual findings under R.C. 2929.14(E)(4) or presuming that sentences were to run concurrently under R.C. 2929.41(A).
{¶ 3} Subsequent to Foster, the United States Supreme Court, in Oregon v. Ice (2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517, upheld the constitutional validity of an Oregon statute similar to Ohio’s pre-Foster sentencing statutes that requires Oregon’s trial judges to make factual findings prior to imposing consecutive sentences.
{¶ 4} The defendant in the case now before us asks us to hold that Oregon v. Ice reinstated or revived the Ohio statutory provisions pertaining to consecutive sentences that were held unconstitutional in Foster. He also argues that certain defendants who were sentenced to consecutive terms after Foster must be resentenced pursuant to the provisions that were invalidated in Foster.
{¶ 5} For the reasons that follow, we determine in the circumstances present here that Ice does not revive the disputed statutory provisions and that defendants who were sentenced by trial judges who did not apply those provisions are not entitled to resentencing. We accordingly affirm the judgment of the court of appeals.
{¶ 6} Although we affirm the judgment below, we acknowledge that given the holding and reasoning of the United States Supreme Court in Ice, the General Assembly is no longer constrained by Foster’s holdings regarding the constitutionality of the consecutive-sentencing provisions invalidated in Foster and may, if it chooses to do so, respond with enactment of a statutory provision in light of Ice’s holding.
I. Facts and Procedural History
{¶ 7} Defendant-appellant, Kenneth Hodge, pleaded guilty in Hamilton County Common Pleas Court to nine felonies with firearm specifications. In an entry on September 18, 2008, the trial court merged several counts and imposed an aggregate prison sentence of 18 years — three years for each of five counts of *3 aggravated robbery and three additional years for accompanying firearm specifications. The three-year sentences for the multiple firearm specifications were imposed concurrently with each other and consecutively to the aggravated-robbery sentences.[1] In imposing consecutive sentences on the aggravated-robbery counts, the trial court did not make the findings required by R.C. 2929.14(E)(4) and 2929.41(A) in reliance on this court’s holding in Foster that those statutes were unconstitutional.
{¶ 8} On appeal, Hodge argued in his sole assignment of error that the trial court erred by imposing consecutive sentences without making findings under R.C. 2929.14(E)(4) and 2929.41(A), asserting that Foster’s holding that those statutes were unconstitutional is no longer valid in light of Oregon v. Ice. He asserted that the statutes are, therefore, revived because they have never been specifically repealed by the General Assembly. In rejecting this argument, the First District Court of Appeals cited several decisions of other appellate districts that refused to accept the same argument[2] and briefly stated that it agreed with the reasoning of those decisions: “We remain bound by the Ohio Supreme Court’s decision in Foster. The Ohio Supreme Court has not directly addressed the effect of Oregon v. Ice on Ohio’s sentencing law. Absent a contrary decision by the Ohio Supreme Court, Foster still applies to consecutive sentences. The trial court did not err when it imposed consecutive sentences without making findings of fact.” State v. Hodge (Sept. 16, 2009), 1st Dist. No. C-080968.
{¶ 9} We accepted Hodge’s appeal under our discretionary jurisdiction for the purpose of reviewing the question whether, as a consequence of the decision in Ice, Ohio trial courts imposing consecutive sentences must first make the findings specified in R.C. 2929.14(E)(4) in order to overcome the presumption for concurrent sentences of R.C. 2929.41(A). 124 Ohio St.3d 1472, 2010-Ohio-354, 921 N.E.2d 245.
II. Analysis
{¶ 10} In Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, this court applied the principles developed in Blakely, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, and Apprendi, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, to determine that a number of provisions in Ohio’s sentencing statutes violated the *4 jury-trial guarantee of the Sixth Amendment to the United States Constitution. Particularly relevant to this case, we held in Foster at paragraph three of the syllabus: “Because R.C. 2929.14(E)(4) and 2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before the imposition of consecutive sentences, they are unconstitutional.”
{¶ 11} Upon holding the consecutive-sentencing provisions unconstitutional, we applied United States v. Booker (2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621, to hold that the statutes were severable from the Ohio sentencing framework, so that “[ajfter the severance, judicial fact-finding is not required before imposition of consecutive prison terms.” Foster at paragraph four of the syllabus. We further held that “[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences.” Id. at paragraph seven of the syllabus. We determined that three of the four cases on appeal addressed within the Foster opinion and other cases that were identified in Foster as pending on direct review had to be “remanded to trial courts for new sentencing hearings” because Sixth Amendment principles “as they have been articulated” had to be protected. Id. at ¶ 104.
{¶ 12} In State v. Bates, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, ¶ 18, we recognized that Foster severed and excised former R.C. 2924.14(E) and former R.C. 2929.41(A) in their entirety, and we observed that this action left no specific statute in place to govern the imposition of consecutive sentences beyond the basic statutes regarding the “purposes and principles of sentencing.” We held that common-law sentencing presumptions were therefore reinstated, giving trial judges “the discretion and inherent authority to determine whether a prison sentence within the statutory range shall run consecutively or concurrently.” Id. at ¶ 18-19.
{¶ 13} We reaffirmed Foster and Bates in State v. Elmore, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, holding that a trial court has the discretion to impose consecutive sentences in the wake of those decisions and that despite the severance of the statutory presumptions, a trial court is not required by the rule of lenity to impose minimum or concurrent sentences. Id. at paragraph two of the syllabus and at ¶ 36-41.
{¶ 14} In reliance on these decisions, many defendants in Ohio have been sentenced by trial judges who have exercised their discretion to impose consecutive sentences without applying any of the statutes severed in Foster, including those regarding consecutive sentencing.
{¶ 15} The validity of the reasoning in Foster, however, was called into question by the United States Supreme Court’s decision in Ice. In that case, *5 decided nearly three years after Foster, a five-to-four majority of the court held that Oregon’s consecutive-sentencing statutes, which were similar to the consecutive-sentencing provisions struck down in Foster, do not violate the Sixth Amendment concerns set forth in Apprendi and Blakely. Ice, 555 U.S. at-, 129 S.Ct. at 714-715, 172 L.Ed.2d 517.
{¶ 16} We briefly discussed Ice in Elmore, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, at ¶ 34, stating that Ice “held that a jury determination of facts to impose consecutive rather than concurrent sentences was not necessary if the defendant was convicted of multiple offenses, each involving discrete sentencing prescriptions. The jury historically played no role in a decision to impose sentences consecutively or concurrently. The choice rested exclusively with the judge, and thus the Oregon statutes did not erode any traditional function of the jury. Further, the state had sovereign authority over the administration of its criminal justice system, and there was no compelling reason to diminish the state’s role by curbing the state’s limitation on the discretion of judges in imposing consecutive or concurrent sentences.”
{¶ 17} We declined in Elmore, however, to definitively resolve Ice’s effect on Ohio’s sentencing laws, stating that “Foster did not prevent the trial court from imposing consecutive sentences; it merely took away a judge’s duty to make findings before doing so. The trial court thus had authority to impose consecutive sentences on Elmore. We will not address fully all ramifications of Oregon v. Ice, since neither party sought the opportunity to brief this issue before oral argument.” (Footnote omitted.) Id. at ¶ 35.
{¶ 18} Foster was not accepted for direct review by the United States Supreme Court, and thus Ice did not specifically overrule Foster. Our decision in Foster is final as to the issues raised by the parties in that appeal.[3]
{¶ 19} We recognize, however, that the decision in Ice undermines some of the reasoning in the Foster decision that judicial fact-finding in the imposition of consecutive sentences violates the Sixth Amendment. Although there are differences between the Ohio provisions struck down in Foster and the Oregon statutes upheld in Ice, these distinctions are immaterial in light of the broad reasoning employed in Ice. After Ice, it is now settled law that Apprendi and Blakely do not control the resolution of this issue and that the jury-trial guarantee of the Sixth Amendment to the United States Constitution does not preclude states from requiring trial court judges to engage in judicial fact-finding prior to imposing consecutive sentences. See Elmore, 122 Ohio St.3d 472, 2009-Ohio- *6 3478, 912 N.E.2d 582, at ¶ 34 (the Oregon statutes at issue in Ice “did not erode any traditional function of the jury”).
{¶ 20} Had we the benefit of the United States Supreme Court’s decision in Ice regarding Oregon’s consecutive-sentencing statutes prior to our decision in Foster, we likely would have ruled differently as to the constitutionality, and continued vitality, of our own state’s consecutive-sentencing provisions. But we did not have that guidance, and our holding was reasonable in light of the status of federal constitutional law at the time.[4]
{¶ 21} Although we acknowledge that Ice has an impact on Foster, we do not accept Hodge’s argument that the decision in Ice automatically and retroactively reinstates the consecutive-sentencing statutes invalidated in Foster. Hodge’s argument is based on the fact that the severed statutory provisions invalidated in Foster have never been repealed by the General Assembly.
{¶ 22} The gist of Hodge’s position is that we should overrule the holding in Foster that R.C. 2929.14(E)(4) and 2929.41(A) are unconstitutional and hold that the consecutive-sentencing statutes struck down in Foster have been reinstated or revived by the decision in Ice, with the ultimate result that Hodge is entitled to be resentenced pursuant to the former consecutive-sentencing statutes. However, as explained below, we decline Hodge’s request that we hold that the statutes have been revived and accordingly also deny the relief he seeks.
{¶ 23} Some of our precedents contain statements of law that seem to support the position that when this court holds a statute unconstitutional, the statute can no longer have any effect and can be revived only through affirmative action of the General Assembly. See, e.g., Middletown v. Ferguson (1986), 25 Ohio St.3d 71, 80, 25 OBR 125, 495 N.E.2d 380 (legislation that was unconstitutional at the time of its passage is “void from its inception,” and “an unconstitutional law must be treated as having no effect whatsoever from the date of its enactment”);[5] Franklin Cty. Bd. of Elections v. State ex rel. Schneider (1934), 128 Ohio St. 273, 191 N.E. 115, paragraph five of the syllabus (“An act of the General Assembly, *7 which was unconstitutional at the time of enactment, can be revivified only by reenactment”).
{¶ 24} However, a close examination of this case law reveals that it is of limited relevance to the resolution of this case, because the contexts of those decisions bear little resemblance to the circumstances here. Schneider, on which the state’s amici particularly rely, does not contain any meaningful analysis that explains the statement of law quoted above. Thus, the issue in this case regarding the possible revival of the consecutive-sentencing statutory provisions severed by Foster is essentially a matter of first impression for this court.
{¶ 25} At the outset, it is important to recognize the effect and definitiveness of our holdings in Foster. In Bates, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, ¶ 18, we stated that the severance and excision of the consecutive-sentencing statutes “in their entirety” in Foster leave “no statute to establish” the presumption for concurrent sentences or to require that findings be made to impose consecutive sentences. We also referred to the severed statutes as “former,” id., thus indicating that those statutes for enforcement purposes are no longer considered part of the statutory framework and have no force or effect.[6]
{¶ 26} Another crucial consideration is that although the Ice decision holds that it is constitutionally permissible for a judge to engage in judicial fact-finding to impose consecutive sentences, there is no constitutional requirement that a judge make findings of fact before imposing consecutive sentences. Two of the foundations of the Ice holding are the long history of giving great deference to a trial court’s exercise of discretion in determining whether consecutive sentences are appropriate and the common-law preference for consecutive sentences over concurrent sentences. Id. at-, 129 S.Ct. at 717-718, 172 L.Ed.2d 517. See also id. at-, 129 S.Ct. at 719, 172 L.Ed.2d 517 (“All agree that a scheme making consecutive sentences the rule, and concurrent sentences the exception, encounters no Sixth Amendment shoal”); Bates, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, at ¶ 16-18 (Foster’s severance of the consecutive-sentencing statutes reinstated the common-law presumption in favor of consecutive sentences); Elmore, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, at ¶ 35 *8 (after Foster, trial judges continue to have the authority to impose consecutive sentences).
{¶ 27} Moreover, this court in Foster also severed a number of statutory provisions besides the consecutive-sentencing ones on the authority of Blakely and Apprendi. The other stricken provisions are not at issue in this case, and the holdings in Foster regarding these provisions were not implicated in Ice. We are unable to say that the General Assembly would intend the consecutive-sentencing provisions to be resurrected when the other judicial fact-finding provisions, which supported the overall sentencing framework, remain constitutionally invalid and excised. It would be speculative to assume that the General Assembly would wish to reinstate only the consecutive-sentencing provisions when the other provisions struck down in Foster may not be reinstated also. This militates in favor of requiring positive action by the General Assembly to indicate its intent and desire in a complicated area of the law.[7]
{¶ 28} We find it of great significance that Hodge has not cited a single Ohio case that even remotely ponders the propriety of the concept of automatic revival. We further note that none of our precedents have suggested to the General Assembly that a statute that has been held unconstitutional by this court and that has never been repealed by that body may be automatically and suddenly revived through a later court decision. Given this situation, the General Assembly has never had a particular incentive to repeal statutes that we have held unconstitutional, which further supports our reluctance to assume that the General Assembly would intend the consecutive-sentencing statutes to be reinstated, in the absence of any affirmative indications to that effect from that body.
{¶29} Considered in the abstract, the rule of automatic revival has the potential to disrupt expectations of predictability and finality that attach as a consequence of this court’s issuing of a decision holding a statute unconstitutional. If automatic revival were recognized, parties who have acted in reliance on this court’s determination of unconstitutionality may have the reasonableness of their actions called into question should this court, perhaps many years in the future, *9 overrule the previous decision and determine that the statute held unconstitutional was constitutional after all. A conclusion in this situation that the previously stricken statute should automatically revive because it was never affirmatively repealed by an act of the General Assembly would conflict with and subvert fundamental finality interests that should normally be part and parcel of this court’s definitive holding that a statute fails to comply with either the United States Constitution or the Ohio Constitution.
{¶ 30} Because there is no constitutional requirement that a judge make findings of fact before imposing consecutive sentences, the disruptive effects that would result from reviving the statutory provisions on consecutive sentences that were invalidated and severed in Foster need to be taken into account in this case. These practical considerations heavily tip the balance against now recognizing a concept of automatic revival in the scenario presented here.
{¶ 31} All parties involved in our criminal-justice system' — defendants, prosecutors, judges, and victims of criminal activity — have justifiably relied on Foster’s holdings regarding consecutive sentences since that case was decided and reaffirmed by subsequent decisions. A determination that many defendants (perhaps hundreds or even thousands) who have received constitutionally acceptable consecutive sentences would nevertheless be entitled to resentencing would disrupt reasonable and settled expectations of finality.
{¶ 32} In addition, ordering resentencing in numerous cases in which consecutive sentences have been imposed in reliance on Foster would place an undue burden on our judicial system. It is a burden that is manifestly not outweighed by a commensurate benefit to defendants, when one considers that the sentence each received in reliance on Foster is not thereby constitutionally deficient.
{¶ 33} Hodge cites cases involving somewhat analogous situations from other jurisdictions that have held that a statute previously declared unconstitutional by a court decision, and not thereafter legislatively repealed, is automatically revived when the decision that held the statute unconstitutional is overruled by a subsequent decision. In particular, Hodge relies on Jawish v. Morlet (D.C.App. 1952), 86 A.2d 96, 97, in which the court stated:
{¶ 34} “There are comparatively few cases dealing squarely with the question before us, but they are unanimous in holding that a law once declared unconstitutional and later held to be constitutional does not require re-enactment by the legislature in order to restore its operative force. They proceed on the principle that a statute declared unconstitutional is void in the sense that it is inoperative or unenforceable, but not void in the sense that it is repealed or abolished; that so long as the decision stands the statute is dormant but not dead; and that if the decision is reversed the statute is valid from its first effective date.”
*10 {¶ 35} We are not persuaded by the reasoning of the courts in other jurisdictions that have decided cases involving the potential revival of statutes; those decisions are necessarily based on the factual contexts of the situations before them. None of the cases cited by Hodge, and no cases we have discovered in our own research, have involved a state court of last resort finding in favor of automatic revival in a situation with all the varied attributes that are implicated in this case. The overall circumstances of this case do not present a compelling justification for holding that the consecutive-sentencing statutory provisions held unconstitutional and severed in Foster are automatically revived without further action by the General Assembly. We accordingly decline to adopt a dormant-but-not-dead rule in the circumstances presented here.
{¶ 36} In view of all the above reasons, we conclude that the consecutive-sentencing statutes severed by Foster are not automatically revived. Accordingly, those statutes remain null and of no effect absent an affirmative act of the General Assembly. At the same time, however, we discern no constitutional impediment to the General Assembly’s legislating in this area if it chooses to do so in light of the constitutional propriety of statutory provisions pertaining to the imposition of consecutive sentences expressed in Ice.
III. Conclusion
{¶ 37} In summary, Ice’s impact on Ohio law is collateral. Our decision in Foster was not on direct appeal in Ice, and Ice did not directly overrule Foster. Nearly five years have passed since Foster definitively and unequivocally severed the consecutive-sentencing sections, along with other provisions, from the statutory sentencing framework, and ordered resentencing for those defendants whose cases were then on direct appeal.
(¶ 38} Numerous defendants have received consecutive sentences that have met all constitutional requirements from trial court judges acting in reliance on Foster, Bates, Elmore, and other precedents. Considering also that (1) judicial fact-finding is not constitutionally required in order to impose consecutive sentences, (2) none of our precedents have given notice to the General Assembly that provisions of the Revised Code that have been held unconstitutional and have been severed would be revived, perhaps many years after their enactment and subsequent invalidation, and (3) other considerations against revival strongly outweigh the considerations in favor of revival, we reject the concept of automatic revival under the circumstances presented here.
{¶ 39} For all the foregoing reasons, we hold that the decision of the United States Supreme Court in Oregon v. Ice does not revive Ohio’s former consecutive-sentencing statutory provisions, R.C. 2929.14(E)(4) and 2929.41(A), which were held unconstitutional in State v. Foster. Because the statutory provisions are not revived, trial court judges are not obligated to engage in judicial fact-finding prior *11 to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made.
{¶ 40} The trial court in this case did not err in imposing consecutive sentences without applying R.C. 2929.14(E)(4) and 2929.41(A), and defendants such as Hodge who were sentenced without application of the statutes are not entitled to resentencing. We affirm the judgment of the court of appeals.
Judgment affirmed.
Pfeifer, Lundberg Stratton, O’Connor, O’Donnell, and Lanzinger, JJ., concur.
Brown, C.J., dissents.

. Pursuant to R.C. 2929.14(E)(1), the trial court was required to run the sentence for the firearm specifications consecutively to the sentences for the other offenses. Thus, the consecutive sentence on the firearm specifications is not at issue in this case.

. See State v. Miller, 6th Dist. No. L-08-1314, 2009-Ohio-3908, 2009 WL 2414177; State v. Robinson, 8th Dist. No. 92050, 2009-Ohio-3379, 2009 WL 1965257; State v. Mickens, 10th Dist. Nos. 08AP-743, 08AP-744, and 08AP-745, 2009-Ohio-2554, 2009 WL 1526918; State v. Krug, 11th Dist. No. 2008-L-085, 2009-Ohio-3815, 2009 WL 2370931.

. The United States Supreme Court had an opportunity to review our decision in Foster when it was appealed to that court, but denied certiorari. Foster v. Ohio (2006), 549 U.S. 979, 127 S.Ct. 442, 166 L.Ed.2d 314.

. A vigorous dissent in Ice criticized the majority for abandoning the “clear” principles of Apprendi and Blakely and for “its repeated exhumation of arguments dead and buried by prior cases.” 555 U.S. at-, 129 S.Ct. at 720, 723, 172 L.Ed.2d 517 (Scalia, J., dissenting).

. A recognized exception to the rule that a statute declared unconstitutional is wholly void, that is, when rights have vested in reliance on the statute, has no application to this case. As we observed in Elmore, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, at ¶ 24-26, a defendant sentenced pursuant to Fosters holdings has notice of the sentencing range, which was not changed by Foster, and “never had an irrebuttable presumption of * * ® concurrent sentences.” Since R.C. 2929.41(A) established only a rebuttable presumption for concurrent sentences, the imposition of consecutive sentences in this situation does not affect any vested right.

. We do not imply that the legal effect of a judicial decision “severing” a statutory provision from the remainder of the statute is to actually repeal the invalid statutory language. Only the General Assembly, the lawmaking branch of our constitutional government, has authority to repeal, as well as to enact, statutory language. Rather, a statutory provision that is held to be legally invalid, as here, becomes definitively unenforceable, and it is said to be “severed” in order to distinguish it from the remaining portion of the statute, which remains valid and enforceable. See R.C. 1.50 (“If any provision of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable”).

. We are aware that the General Assembly has, since Foster was decided, enacted a number of bills to modify some aspects of R.C. 2929.14 without repealing the invalidated text in R.C. 2929.14(E)(4), one of the consecutive-sentencing provisions that was struck down and severed in Foster. (R.C. 2929.41, which contains the other consecutive-sentencing statute invalidated in Foster — R.C. 2929.41(A) — has not been similarly amended.) However, there has been no affirmative reenactment of R.C. 2929.14(E)(4) indicating an intent by the General Assembly that that statute was still meant to be effective. See Stevens v. Ackman (2001), 91 Ohio St.3d 182, 193-195, 743 N.E.2d 901 (discussing the technical requirements, including that new matter inserted into a statute must be capitalized, that indicate the General Assembly’s intent in amending or enacting a statute). Consequently, the legislation amending other portions of R.C. 2929.14 has no impact on our resolution of this case.