[Cite as *State v. Williams*, 2011-Ohio-2551.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   95853

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RICHARD WILLIAMS

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the

Cuyahoga County Court of Common Pleas
Case No.   CR-534090

**BEFORE:**   Keough, J., Cooney, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**   May 26, 2011

**ATTORNEY FOR APPELLANT**

Stephen L. Miles
20800 Center Ridge Road
Suite 405
Rocky River, OH 44116


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Mary McGrath
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

**{¶ 1}** Defendant-appellant, Richard Williams ("Williams"), appeals the trial court's acceptance of his guilty plea and his sentence. For the following reasons, we affirm.

**{¶ 2}** In February 2010, Williams was charged with seven counts each of kidnapping, felonious assault, and gross sexual imposition, and six counts of rape. All counts contained one or more specifications, including notice of prior conviction, repeat violent offender specifications, sexual motivation specifications, and sexually violent predator specifications.

**{¶ 3}** Since the procedural nature of this case is of importance to the disposition of this appeal, we recount it in some detail. On the day of trial, the State presented Williams with a plea agreement. Following extensive day-long plea negotiations, the trial court was advised that Williams would be entering into a plea agreement. After the State set forth the plea agreement on the record, the trial court engaged in the requisite Crim.R. 11 plea colloquy. During the colloquy, the trial court thoroughly advised Williams of his constitutional rights he would be waiving by pleading guilty to the charges set forth in the agreement. After Williams affirmatively stated he understood these rights, the trial court advised him of the penalties he faced on each count, postrelease control, and his sexual offender classification.

When the trial court inquired if any promises had been made, Williams answered in the affirmative, stating that he believed his sentence would be 25 years to life. After the court told Williams that he would be facing a life sentence with parole eligibility after 25 years, the trial court accepted Williams's plea and granted the State's motion to amend the counts as agreed. Williams then pled guilty to the counts as the trial court delineated them on the record. When the trial court asked for his plea to the rape of B.U.,[1] Williams indicated he did not rape B.U. The trial court, the prosecutor, and defense attorney realized that a mistake had been made in the plea agreement and there was some confusion as to the proper agreement. The prosecutor changed the victim's name on the rape count to reflect what was intended. The trial judge stated:

{¶ 4} "Court: * * * What the court is going to do is obviously I've gone through the constitutional rights of the defendant. He has indicated he understands he is waiving or giving up those rights and answered the other questions in the Rule 11 colloquy.

{¶ 5} "However, when I went through the offenses to which he would be pleading guilty, although the penalties do not change, some of the amendments have changed. So I'm going to strike that and also advise the

---

[1]We use initials to protect the identities of sexual assault victims involved.

defendant once again of exactly what he'll be pleading to and strike any of his changes of plea. * * *."

{¶ 6} After the trial court went through the plea agreement with the prosecutor and defense attorney, Williams again questioned the potential sentence of 25 years to life. After a sidebar conversation, the court addressed Williams and advised him that his sentence was at her discretion and she would make no promises as to whether he would receive a sentence of 25 years to life. Williams then asserted that he wished to go to trial. The trial court acknowledged this request: "Okay. We'll see you tomorrow morning in civilian clothes." The trial court transcript indicates that the court then stood in "recess."

{¶ 7} When the trial court reconvened that same day, the judge addressed the parties and stated that it was her understanding that the parties had engaged in further plea negotiations during the recess. The record, however, is unclear how much time had elapsed before reconvening. The trial court then set forth the new plea agreement. After a few brief conferences with his counsel, Williams indicated to the trial court that he wished to accept the new plea deal:

{¶ 8} "Court: Okay. All right. I've gone through your constitutional rights, did you understand those rights and did you understand that you are waiving or giving up those rights?

**{¶ 9}** "Williams: Yes.

**{¶ 10}** "Court: All right. And you answered truthfully when I asked your age, education, whether you were under the influence of drugs or alcohol, about your citizenship; is that correct?

**{¶ 11}** "Defendant: Yes."

**{¶ 12}** The trial court set forth the plea, the penalties associated therewith, the possibility and consequences of Williams violating his current parole status, Williams's sex offender classification, and postrelease control. Williams entered pleas of guilty to the renegotiated plea: guilty to one count of gross sexual imposition and guilty to one count of rape with a prior conviction specification for rape. Following the plea, the trial court stated, "All right. Let the record reflect that the court finds the defendant knowingly, voluntarily and with a full understanding of his rights enters his change of plea." Both the defense attorney and prosecutor stated they were satisfied with the court's compliance with Crim.R. 11.

**{¶ 13}** The trial court sentenced Williams to a life sentence on the rape charge, with eligibility for parole after 25 years, to run consecutive to a sentence of five years on the gross sexual imposition charge, for a total of life in prison, with eligibility for parole after 30 years.

**{¶ 14}** Williams filed this delayed appeal, challenging the validity of his plea and sentence.

Plea

{¶ 15} Under Crim.R. 11(C)(2), before accepting a guilty plea in a felony matter, a trial court must personally address the defendant and (1) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty; (2) inform the defendant of and determine that the defendant understands the effect of the plea, and that the court may proceed with judgment after accepting the plea; and (3) inform the defendant and determine that the defendant understands that he is waiving his constitutional rights to a jury trial, to confront the witnesses against him, to call witnesses in his favor, and to require the State to prove his guilt beyond a reasonable doubt at a trial where the defendant cannot be forced to testify against himself.

{¶ 16} A trial court must strictly comply with the mandates of Crim.R. 11(C)(2) regarding the waiver of constitutional rights, meaning the court must actually inform the defendant of the constitutional rights he is waiving and make sure the defendant understands them. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶27. Failure to fully advise a defendant of his Crim.R. 11(C)(2)(c) rights renders a plea invalid. *Veney* at _29.

{¶ 17} In his first assignment of error, Williams argues that he did not enter his plea knowingly and voluntarily because the trial court failed to

strictly comply with the mandates of Crim.R. 11(C)(2) when it failed to readvise him of his constitutional rights prior to accepting his guilty plea to the renegotiated plea. Williams has failed to cite to any legal authority supporting his argument; however, our research of the issue failed to find precedent for this court to follow.

{¶ 18} During the initial plea colloquy, the trial court strictly complied with Crim.R. 11(C)(2)(c) by advising Williams of his constitutional rights. Williams affirmatively stated he understood that by pleading guilty to the offenses set forth in the initial plea agreement, he would be waiving or giving up his constitutional right to have a trial by jury or before a judge, his right to subpoena witnesses to appear and testify, his right to cross-examine witnesses, the right to have the State prove his guilt beyond a reasonable doubt, and the right to not testify, nor be compelled to testify, at trial. Tr. 31-33.

{¶ 19} The plea colloquy was disrupted, not because Williams did not understand his Crim.R. 11 rights, but because confusion existed as to the victim of the rape charge and because Williams thought he was receiving a 25-to-life sentence. It was during this confusion that Williams demanded a trial. After an unknown period of time, the parties negotiated a new plea agreement, which was placed before the trial court. The trial court did not readvise Williams of his constitutional rights, but rather questioned whether

he understood those constitutional rights that were previously set forth and whether he understood he would be waiving those rights. After Williams affirmatively stated he understood, the trial court proceeded with the plea, ultimately accepted the plea, and imposed a sentence.

{¶ 20} This court would prefer trial courts to take the extra step and readvise a defendant of his Crim.R. 11(C)(2) constitutional rights when a plea is disrupted or when a new plea agreement has been reached. At the very least, the trial court should make sure the record reflects how much time has elapsed between the original plea and the end of the recess. Trial courts run the risk of noncompliance with the mandatory provisions of Crim.R. 11 when the advisement of a defendant's constitutional rights does not immediately precede the actual plea entered by a defendant. See *Veney*; *State v. Troiano*, Franklin App. No. 09AP-862, 2010-Ohio-3019, _9.

{¶ 21} However, we find that the facts and circumstances in this case demonstrate that the trial court strictly complied with the mandates of Crim.R. 11(C)(2). The trial judge commented that she previously advised Williams of his constitutional rights and questioned him prior to accepting his plea on the renegotiated plea deal as to whether he understood those rights and that he was waiving those rights. Williams responded affirmatively.

{¶ 22} Finally, the record reflects that the nature of the charges in the renegotiated plea deal were the same as the initial plea deal, except the

renegotiated plea contained fewer charges. In the first plea deal, the State offered the following plea: one count of kidnapping, two counts of felonious assault, one count of gross sexual imposition, and one count of rape containing a prior conviction specification. In the renegotiated deal, the State offered, and Williams ultimately pled guilty to, one count of gross sexual imposition and one count of rape containing a prior conviction specification. The charges did not change, just the number of them.

{¶ 23} Finally, because only a limited lapse of time occurred between the two pleas such that the pleas occurred on the same day and possibly within hours of each other, the initial colloquy between Williams and the trial court was sufficient to satisfy the mandates of Crim.R. 11(C)(2)(c).

{¶ 24} Accordingly, the trial court did not err in failing to readvise Williams of his Crim.R. 11(C)(2)(c) rights prior to accepting his guilty plea. Williams's first assignment of error is overruled.

Consecutive Sentence Findings

{¶ 25} Williams contends in his second assignment of error that the trial court erred in sentencing him to consecutive terms of imprisonment without making the findings required under R.C. 2929.14(E)(4), in violation of his right to due process of law under the Fourteenth Amendment to the United States Constitution. Williams asserts that the holding in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, that R.C. 2929.14(E)(4) and

2929.41(A) were unconstitutional, is no longer valid in light of *Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517.

{¶ 26} The Ohio Supreme Court recently rejected this argument in *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768.  The court concluded that *Ice* did not require it to depart from its holding in *Foster* because "there is no constitutional requirement that a judge make findings of fact before imposing consecutive sentences" and requiring resentencing to include findings of fact would "disrupt reasonable and settled expectations of finality," and impose an "undue burden on the judicial system."  *Hodge* at _30-32.

{¶ 27} Accordingly, Williams's second assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

COLLEEN CONWAY COONEY, P.J., and
SEAN C. GALLAGHER, J., CONCUR