**[Cite as *State v. Tell*, 2011-Ohio-2661.]**

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95425**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LYNELL TELL

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART AND VACATED IN PART

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-527825 and CR-531463

**BEFORE:**     Sweeney, P.J., Rocco, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**     June 2, 2011

**ATTORNEY FOR APPELLANT**

Joseph Vincent Pagano, Esq.
P.O. Box 16869
Rocky River, Ohio 44116

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Patrick J. Lavelle, Esq.
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, P.J.:

{¶ 1} Defendant-appellant Lynell Tell ("defendant") appeals his convictions for drug related offenses and his accompanying eight-and-one-half-year prison sentence. After reviewing the facts of the case and pertinent law, we affirm in part, reverse and remand in part, and vacate in part.

{¶ 2} On June 11, 2009, Cleveland Police arranged to purchase one ounce of crack cocaine for $1,500 from Brandon Ward. Detective Scott Moran worked undercover and used a confidential reliable informant ("the CRI") to set up the controlled buy/bust. Ward had

acted as the middleman in providing Det. Moran and the CRI with drugs from a supplier on two prior occasions, May 19 and May 26, 2009.

{¶ 3} Det. Moran testified that he was wired with a recording device on the day in question. On the recorded transmission from the wire, Ward referred to the man who was to supply the drugs as "Oats." Evidence in the record shows that defendant's nickname is "Oats."

{¶ 4} Det. Moran testified that the CRI was searched for money and contraband prior to the buy/bust. The CRI called Ward, who instructed the CRI to go to an apartment complex on Fulton Parkway for the buy. The CRI and Det. Moran met Ward in the parking lot and waited for the drugs to be delivered. Approximately 30 minutes later, a gold Chevy Blazer pulled into the parking lot and defendant got out of the vehicle. Defendant approached Ward. Det. Moran gave Ward the buy money and gave the CRI a digital scale to weigh the drugs. Defendant, Ward, and the CRI went upstairs to an apartment. Det. Moran waited downstairs because the person who lived in the apartment did not know him. A few minutes later, the CRI came back downstairs and handed Det. Moran a bag of crack cocaine.

{¶ 5} The CRI testified that Det. Moran gave him the buy money when defendant arrived at the complex. The CRI, Ward, and defendant went into the apartment. Nancy May, who is Ward's girlfriend's mother, lived in the apartment and was present at the time. The CRI handed defendant the buy money. Defendant and Nancy went into the bathroom to

count the money, came back out, and defendant pulled an ounce of crack cocaine from his pocket. The CRI weighed the drugs, left the apartment, and turned the drugs and scale over to Det. Moran.

{¶ 6} Cleveland Police Lieutenant Michael Connelly testified that, after learning that the drug buy was complete, he followed defendant, who was driving a gold Blazer. May was also in defendant's vehicle. Defendant stopped at a gas station and Lieut. Connelly arrested him. The police seized approximately $1,300, which they found in defendant's pocket, and defendant's cell phone. After searching defendant's SUV, the police found approximately two grams of crack cocaine in defendant's pool cue carrier.

{¶ 7} May testified that, on June 11, 2009, she was living in an apartment on Fulton Parkway. That evening, she planned to go to Lorain with defendant, who was a friend of hers, to watch him play in a pool tournament. According to May, Ward brought the CRI to her apartment that evening to buy drugs from defendant. She observed the CRI hand money to Ward and Ward hand the money to defendant. She then saw defendant hand the drugs to Ward, who handed them to the CRI. May denied that she or defendant went into the bathroom at any time during this transaction.

{¶ 8} Ward testified that the CRI contacted him to purchase an ounce of crack cocaine on June 11, 2009. Ward called defendant to supply the drugs, and defendant told Ward to meet him at May's apartment because defendant was picking her up for a pool tournament.

The CRI and Det. Moran met Ward at May's apartment complex and waited for approximately 45 minutes for defendant to arrive. Upon defendant's arrival, defendant, Ward, and the CRI went up to May's apartment. Det. Moran stayed downstairs. When they got inside the apartment, the CRI gave defendant $1,500, and defendant handed the crack cocaine to the CRI, who weighed it. Defendant and May went into the bathroom. The CRI left the apartment and defendant gave Ward $200. Ward left to go home and defendant left with May.

{¶ 9} Cleveland Police Detective Leland Edwards was part of the team that arrested defendant at the gas station on June 11, 2009. Det. Edwards testified that he searched defendant's vehicle and found drugs in defendant's pool cue carrier. Specifically, he found a "plastic baggie with [crack] cocaine and a lottery ticket with powdered cocaine," which totaled approximately two grams. Det. Edwards also found $1,340 in defendant's pocket, $1,260 of which was identified as the buy money.[1] Asked about the money, defendant stated that it was for drugs he was supposed to buy for Ward. Additionally, defendant stated that the drugs found in his pool cue carrier were for personal use.

{¶ 10} Defendant testified on his own behalf and stated that he went to May's apartment on the evening of June 11, 2009 to take her to his pool tournament. According to defendant, Ward called him earlier that day. Defendant told Ward that he was picking May up later that evening, and they could talk there. When defendant arrived at May's apartment complex, he

---

[1]Subsequently, $200 of the buy money was found in Ward's pocket.

saw Ward sitting on the steps. Defendant went upstairs to May's apartment and used the bathroom. When defendant came out of the bathroom, Ward was in May's apartment. At some point, the CRI came into the apartment. Defendant stated that Ward gave him $1,200 to $1,300 to purchase crack cocaine. Defendant told Ward he would try, but he might not have time because he was running late for the pool tournament. After about 15 minutes, the CRI left, then Ward left, and finally, defendant and May left. Defendant denied bringing drugs into the apartment and denied supplying the ounce of crack cocaine that the CRI turned over to Det. Moran.

{¶ 11} Defendant and May stopped to get gas, and the police arrested him. When the police searched defendant, they found approximately $1,300 in his pants pocket and two small baggies of crack cocaine in defendant's pool cue carrier. Defendant stated that he bought the crack for personal use and that Ward gave him the money.

{¶ 12} On August 21, 2009, defendant was indicted for drug possession in violation of R.C. 2925.11(A) for the ounce of crack cocaine; two counts of drug trafficking in violation of R.C. 2925.03(A)(1) and (2) for the ounce of crack cocaine; drug possession in violation of R.C. 2925.11(A) for the two grams of crack cocaine; drug trafficking in violation of R.C. 2925.03(A)(2) for the two grams of crack cocaine; and possessing criminal tools in violation of R.C. 2923.24(A).

{¶ 13} On June 17, 2010, after a bench trial, the court found defendant guilty of all charges. On June 22, 2010, the court merged the three counts relating to the ounce of crack cocaine, which are all first degree felonies. The court sentenced defendant to six years in prison for these 10 felonies; 18 months in prison for the two counts related to the smaller amount of crack cocaine, which are fourth degree felonies; and 12 months in prison for possessing criminal tools, which is a fifth degree felony. The court ran these prison terms concurrently, for a sentence of six years, to be served consecutive to 18-month and 12-month prison sentences defendant received in two other cases, for an aggregate sentence of eight-and-one-half years in prison.

{¶ 14} Defendant appeals and raises three assignments of error for our review.

{¶ 15} "I. Appellant's convictions were not supported by sufficient evidence and the trial court erred by denying his motions for acquittal."

{¶ 16} When reviewing sufficiency of the evidence, an appellate court must determine, "after viewing the evidence in a light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.

{¶ 17} Defendant does not appeal his conviction for possessing the two ounces of crack found in his pool cue carrier; rather, he challenges his conviction for trafficking these drugs,

arguing that there was no evidence these drugs were for sale. Additionally, defendant argues that there was insufficient evidence to convict him of possessing criminal tools.

{¶ 18} Defendant was convicted of trafficking the drugs found in his pool cue case in violation of R.C. 2925.03(A)(2), which states that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."

{¶ 19} The evidence in the record shows that, typically, small amounts of crack cocaine are packaged for sale in plastic sandwich baggies. The police officers who searched defendant's car testified that two grams of crack cocaine were found in baggies inside defendant's pool cue case. Defendant testified that the crack was for his personal use and that it was packaged in baggies because that is the way he bought it. The court found that the small quantity was consistent with personal use. However, the drugs were packaged for sale, they were hidden, and defendant was transporting them in his vehicle. Because defendant had just completed the sale of an ounce of crack cocaine, this created an inference that defendant was trafficking the two grams of crack as well.

{¶ 20} We cannot say that the court erred in finding sufficient evidence to convict defendant of trafficking under these circumstances. However, it was error for the court to sentence defendant for drug possession in violation of R.C. 2925.11(A) and drug trafficking in

violation of R.C. 2925.03(A)(2), relating to the same substance, because these are allied offenses of similar import that should be merged for sentencing purposes. *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶30. The court's finding defendant guilty of these two offenses remains intact. Pursuant to *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶25, we "reverse the judgment of conviction and remand for a new sentencing hearing at which the state must elect which allied offense it will pursue against the defendant."

{¶ 21} Defendant next argues that the evidence was insufficient to convict him of possessing criminal tools in violation of R.C. 2923.24(A), which states as follows: "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

{¶ 22} Defendant's indictment for possessing criminal tools included money, a cell phone, and miscellaneous personal papers. The court found insufficient evidence that the $80 of defendant's personal money "was a criminal tool in this particular situation," but found defendant guilty of this offense in relation to his cell phone and the miscellaneous personal papers.

{¶ 23} This court recently held that "[t]he ubiquitousness of cell phones is such that the mere possession of a cell phone is not ipso facto proof that it was used in drug trafficking." *State v. Byers*, Cuyahoga App. No. 94922, 2011-Ohio-342, ¶9. In the instant case, there is

evidence that "calls were made" between defendant and Ward. When defendant was arrested, his cell phone was confiscated, and this phone is the subject of the criminal tools charge. As the court stated, "Whether or not it was that particular cell phone, yes, there is no evidence of that * * *." Under our holding in *Byers*, we find this evidence insufficient to show that defendant used this cell phone criminally. Likewise, we find insufficient evidence to show that defendant possessed "miscellaneous personal papers" with the purpose to use them criminally. The only evidence of "papers" in this case is the lottery ticket that was found with the drugs in defendant's pool cue carrier.

{¶ 24} Defendant's first assignment of error is overruled as to the drug trafficking charge and sustained as to the offense of possessing criminal tools.

{¶ 25} In defendant's second assignment of error, he argues as follows:

{¶ 26} "II. The convictions were against the manifest weight of the evidence."

{¶ 27} The proper test for an appellate court reviewing a manifest weight of the evidence claim is as follows:

{¶ 28} "The appellate court sits as the 'thirteenth juror' and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

{¶ 29} Defendant argues that his convictions for drug trafficking and possession relating to the ounce of crack cocaine and the buy/bust operation are against the manifest weight of the evidence, because the testimony was inconsistent and unreliable about what transpired in May's apartment on June 11, 2009.

{¶ 30} In convicting defendant, the court noted that "some of [the] testimony is not consistent in terms of total chronology and time frame," and who exchanged the money and the drugs. For example, there are inconsistencies as to whether Det. Moran handed the buy money to the CRI or to Ward. Additionally, it is unclear if defendant or Ward handed the drugs to the CRI. However, the court found that these inconsistencies were inconsequential because the evidence clearly showed that $1,500 of buy money went into an apartment and one ounce of crack cocaine came out of the apartment. The only people present were the CRI, defendant, Ward, and May. The CRI was searched before entering the apartment, and he had no drugs with him. Shortly after the transaction, defendant was arrested, and $1,260 of the buy money was in his pocket. The CRI, Ward, and May testified that defendant brought the drugs into the apartment, and Ward referred to his supplier as "Oats," which is defendant's nickname.

{¶ 31} We cannot say that the court lost its way in convicting defendant of drug trafficking and possession concerning the ounce of crack cocaine involved in the controlled buy/bust. Accordingly, defendant's second assignment of error is overruled.

{¶ 32} In defendant's third and final assignment of error, he argues that:

{¶ 33} "III.   The trial court's imposition of consecutive sentences is contrary to law and an abuse of discretion."

{¶ 34} The Ohio Supreme Court set forth the standard for reviewing felony sentencing in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. See, also, *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. *Kalish*, in a plurality decision, holds that appellate courts must apply a two-step approach when analyzing alleged error in a trial court's sentencing. "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." Id. at ¶4.

{¶ 35} In the instant case, defendant argues that the court erred by running defendant's six-year prison sentence consecutive to his prison sentences in two other felony cases, because it "did not make necessary statutory findings and did not provide sufficient reasons for imposing consecutive prison terms * * *."   While this appeal was pending, the Ohio Supreme Court held that "trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences * * *."   *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, ¶39.

**{¶ 36}** Defendant does not argue that his sentence is outside of the statutory range for the offenses of which he was convicted. Accordingly, taking *Hodge* into consideration, we find that defendant's aggregate sentence of eight-and-one-half years in prison is not contrary to law under the first prong of *Kalish*.[2]

**{¶ 37}** Turning to the second prong of *Kalish*, the court took the following things into consideration when sentencing defendant: The court was familiar with the case at hand, as well as the other two cases for which defendant was being sentenced. Defendant had a prior criminal history, including several drug trafficking convictions. Defendant previously served time in prison and showed "a pattern of repeat conduct * * *, having chosen drug trafficking as a profession or a livelihood."

**{¶ 38}** The court addressed defendant and stated, "What you're doing is feeding an ill to society that is causing serious problems to our whole social structure. The people that come before this Court addicted to drugs, to many extents, their lives are forever ruined by drugs." The court found that sentencing defendant to prison was mandatory and "necessary to protect the public and not demean the seriousness of the offense." Additionally, the court found "consecutive sentences necessary to fulfill the purposes and principles of felony sentencing."

---

[2]Notwithstanding the failure to merge defendant's drug possession and trafficking convictions for sentencing purposes as discussed earlier in this opinion.

{¶ 39} Upon review, we find that the court acted within its discretion in sentencing defendant to consecutive prison terms for three drug related cases, and defendant's third assignment of error is overruled.

{¶ 40} Defendant's convictions relating to the one ounce of crack cocaine and the buy/bust operation are affirmed. The judgment of conviction for drug possession and drug trafficking relating to the two grams of crack cocaine found in defendant's pool cue carrier are reversed and remanded for a new sentencing hearing at which the state must elect which offense to pursue. Defendant's conviction for possessing criminal tools and the accompanying sentence are vacated for lack of sufficient evidence. As the court sentenced defendant to concurrent prison terms for the convictions in the case at hand, defendant's aggregate prison sentence remains the same.

Judgment affirmed in part, reversed and remanded in part, and vacated in part.

It is ordered that appellee and appellant split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, PRESIDING JUDGE

KENNETH A. ROCCO, J., and
EILEEN A. GALLAGHER, J., CONCUR