[Cite as *State v. Blackburn*, 2012-Ohio-4590.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 97811 and 97812**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## GARY BLACKBURN

DEFENDANT-APPELLANT

---

**JUDGMENT:**
CONVICTIONS AFFIRMED;
SENTENCE VACATED IN PART; REMANDED
FOR RESENTENCING

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-544142 and CR-547001

**BEFORE:** Boyle, J., Blackmon, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** October 4, 2012

**ATTORNEY FOR APPELLANT**

Timothy F. Sweeney
Law Office - Timothy Farrell Sweeney
The 820 Building, Suite 430
820 West Superior Avenue
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Mark J. Mahoney
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1}   Defendant-appellant, Gary Blackburn, appeals his conviction and sentence.

He raises three assignments of error for our review:

[1.] The trial court erred in failing to either: (A) impose a sentence within the stated range of 2 - 4 years on which Blackburn's guilty plea had been based, or (B) allow Blackburn to withdraw his guilty plea prior to sentencing.

[2.] The trial court erred in denying Blackburn his right to due process of law as guaranteed by the United States and Ohio Constitutions

because his guilty plea was not entered knowingly, intelligently, and voluntarily.

[3.] The trial court erred by sentencing Blackburn to an excessive and consecutive term of imprisonment and/or by allowing the court's anger with Blackburn's actions in skipping bond to override fair consideration of the proper sentencing factors.

{¶2} Finding merit to Blackburn's third assignment of error, we affirm his sentence in part, vacate it in part, and remand for resentencing to determine only whether consecutive sentences are appropriate, and if so, make the appropriate findings on the record pursuant to R.C. 2929.14(C)(4).

## Procedural History and Factual Background

{¶3} In November 2010, in Case No. CR-544142, Blackburn was indicted on two counts of burglary and one count of grand theft for offenses that allegedly occurred on October 28, 2010. One of the burglary counts also carried notice of prior conviction and repeat violent offender specifications. In February 2011, in Case No. CR-547001, Blackburn was indicted on one count of burglary and one count of theft for offenses that allegedly occurred on October 9, 2010. The burglary count also carried notice of prior conviction and repeat violent offender specifications. In the first case, Blackburn stole approximately $6,000 of pots and pans from a westside Marriott. In the second case, he met a woman online, went to her house, and stole her Wii, games, and some jewelry. He entered pleas of not guilty in both cases.

{¶4} In May 2011, Blackburn withdrew his former pleas of not guilty and pleaded guilty to amended charges in both cases. In Case No. CR-544142, Blackburn pleaded guilty to one count of burglary, a second degree felony but without the

specifications, and one count of grand theft, a fourth degree felony. In Case No. CR-547001, Blackburn pleaded guilty to the one count of burglary, a second degree felony but without the specifications. All other charges were nolled.

{¶5} The court then proceeded to sentence Blackburn to an aggregate sentence of eight years in prison. In Case No. CR-544142, the trial court sentenced Blackburn to four years for burglary and 18 months for grand theft, and ordered that they run concurrent to one another but consecutive to the sentence imposed in Case No. CR-547001. In Case No. CR-547001, the trial court sentenced Blackburn to four years for burglary and ordered that it be served consecutive to the sentence imposed in Case No. CR-544142. The trial court also notified Blackburn that he would be subject to three years of mandatory postrelease control.

### Plea Hearing and Sentencing Hearing

{¶6} At the beginning of the plea hearing, the trial court discussed her understanding of the plea deal reached between the state and Blackburn. The trial court then stated:

> Mr. Blackburn, you should also understand that your attorney, Mr. DeCaris, has been advocating very hard for you. And Mr. Mahoney and Mr. DeCaris and I spoke just a few minutes before I came out here today. Mr. DeCaris asked about various sentences that the Court may impose upon you, and where I was leaning.
>
> As a courtesy to your attorney, I indicated to him all facts being equal, what I see here, that I was considering a sentence anywhere from two, three, or four years in the penitentiary.
>
> I know you wrote me a letter requesting a form of probation, that's not going to happen in these cases. So I want you to go into this with your

eyes open. I'm not here to trick you so that you don't understand the Court's perspective.

But that is what I indicated to Mr. DeCaris. He indicated that he had some additional requests for the Court. Perhaps a time for you to get out in between sentence and the presentence investigation, to say goodbye to your family. I told him that I would hear from you after the plea. All right?

* * *

Mr. Blackburn, knowing those things that I've just said to you, coupled with the plea, do you still want to go forward today?

{¶7} Blackburn replied that he did. The trial court then proceeded to inform Blackburn of his constitutional rights and ensure that Blackburn understood that by pleading guilty, he was waiving them. The trial court complied with the remaining Crim.R. 11 requirements, read Blackburn's charges to him and the maximum penalty he could receive for each charge, and obtained guilty pleas from Blackburn after determining that he was knowingly, intelligently, and voluntarily entering into his plea. The trial court also notified Blackburn that he would be subject to a mandatory three years of postrelease control and told him of the consequences of violating the terms of his postrelease control.

{¶8} The trial court then informed Blackburn that she was going to talk to him about a couple of things. The trial court indicated that defense counsel informed the court that Blackburn wanted a couple weeks before he went to prison to be with his family. The court spoke to Blackburn about his drug addiction to OxyContin, and that is "what led to this little spree [he] had." The court asked Blackburn how it could be certain that if it were to let Blackburn out on bond, he would not continue to use drugs.

Blackburn told the court that it could trust him, and explained that he wanted to spend time with his mom and his daughter. The court stated:

> Okay. Lots of people tell me that all the time, so you kind of have to know yourself, because what you're playing with is you're playing with time, right? You're playing with your freedom. And so what — I know you're clean right now, because you've been in custody. So what possible incentive would I have to letting you out, because you can only do more damage for yourself, versus just staying in. You know, talking to the person, writing the PSI, talking to them nicely about what things you'd like to do, that might be the best option for you.
>
> If you get out, if I give you an opportunity — and I'm not even sure I'm going to, to get out and then you, you know, you go get yourself whatever you can, and you don't come back for sentencing, I will punish you significantly for that. And that would hurt, do you see what I'm saying.

{¶9} Blackburn replied that he understood and said he would not get in trouble. Defense counsel then informed the court:

> I was just going to add, he already knows from my conversation with him that it's a 16-year result, because if he — if you're kind enough to give him this opportunity and he doesn't come back, or picks up new charges or uses drugs, the two felony 2s have a potential range of two to eight years, and eight and eight consecutive is how I'm getting the sixteen. And he's aware of that.
>
> [The Court]: Right. These are two separate burglaries, these offenses do not merge for the purposes of sentencing. And you know what, I know in the grand scheme of things, as I look at this, that, you know, one was with the Marriott, one was with a lady that you met, you know, on-line or whatever. But there have been people that have come into my courtroom, who I've given an opportunity to say goodbye to their families and they have not come back, and I have in fact sentenced them very harshly as a result of that. Because what you're telling me is that I can't trust you, and that you're not to be trusted out in the world. Does that make sense?
>
> [Blackburn]: Right, but, Your Honor, I can be trusted.
>
> * * *

[The Court]: Let me say this to you, Mr. Blackburn, you're lucky Mr. DeCaris is standing next to you, number one; number two, if you mess up, I mean, you know, it will be bad, all right? So, I'm going to give you two weeks, say goodbye to your family, get yourself together.

How you conduct yourself while you're out in this next couple of weeks will very much depend on where the Court falls in sentencing, do you understand?

{¶10} Blackburn again indicated that he understood. The court warned Blackburn one more time that there would "be no mercy" from it. Over the state's objection, the court released Blackburn on bond.

{¶11} Two weeks later, Blackburn did not show up for sentencing. The court issued a capias for his arrest. The court heard from the victim of the second case at this hearing. The victim told the court that she was having trouble sleeping since this incident happened, but that she had been going to work. The victim stated that she was "just stressed." She asked the court to continue the no-contact order, and asked that the maximum sentence be imposed.

{¶12} Almost seven months later, in December 2011, the sentencing hearing took place. The court stated that it remembered the circumstances of both cases. The trial court recalled that the second case (where Blackburn met the woman online, went to her house and stole from her) "was more disturbing to the Court."

{¶13} The trial court then reviewed Blackburn's criminal history, stating that he had convictions for escape, attempted escape, aggravated robbery, and failing to comply with an order or signal of a police officer, attempted aggravated arson, attempted kidnapping, and grand theft.

{¶14} Defense counsel then spoke on Blackburn's behalf. He explained that Blackburn "accepted full responsibility for the choices he's made." Defense counsel explained that Blackburn had a very significant drug addiction and knew, even on the day of the plea hearing, that he would not likely be able to "live up to the promises that he was making to the court." Defense counsel offered that none of his prior crimes involved violence, and stated that Blackburn did not pick up any new cases while he was missing.

{¶15} The trial court stated:

I gave Mr. Blackburn a range and Mr. DeCaris a range when I originally took the plea in this case and I indicated at the time it would not be the minimum. But I had indicated there was going to be a prison sanction involved here. I did also inform Mr. Blackburn if he did not show up for sentencing that there would be repercussions as a result of that.

And obviously, I'm deeply concerned because while he might not have picked up any new felonies, you gave me many, many, many sleepless nights as a result of your behavior. I know, in your head you are thinking, judge, you've got lots of cases, how could I be that person? You'd be surprised how this doesn't happen very often, so it was actually pretty disconcerting when I knew you had been picked up, I knew immediately who you were and knew immediately the facts and circumstances in your case. I remembered speaking to you. So I was really significantly disappointed you did not show up for your sentencing. And to say that this didn't impact the way that I would operate my courtroom as a result of your behavior would be — I would not be telling the truth.

I have significantly considered the decision making that I made on the day that I granted you these bonds, and so it will likely be something that this court will not do anymore just because I could not count on you to honor your word to the court. And that was really, I feel like I was tricked by you, and I wish that you had mentioned at the time that I would have been happy to give you the opportunity to request programming, penitentiary programming at the time, that I would have been happy to recommend you for. But at this point my faith in you, my trust in you is very low. It's nothing. It's nil. And I think you know that.

**{¶16}** Blackburn replied:

I know what I did was wrong. Really no excuse for it. I do have a serious problem. I tried to get help when I was out there the first two weeks but I slipped. I had so much on my mind and I slipped. I didn't know what to do. I panicked. I freaked out and I just lost control. I didn't mean to do any of this. I had every intention of going back to report in those two weeks. Just so much on my plate I didn't know what to do. I was scared. I was worried.

**{¶17}** The court told Blackburn that if he had turned himself in, she might be able to believe him. The court then stated:

I mean especially for the people that actually honor their word; you know, they go out, wrap up affairs, they come back and stand up and they accept responsibility for whatever they have done and they move forward.

I hope that the time that you are going to spend incarcerated gives you an opportunity to really reflect on how you are going to be able to live your life in a better way when you are done with your prison sanction.

But coupled with your prior criminal history you give the court very little faith that you are able to make good choices when you are out. So ultimately I'm at the point now where I feel as if my highest obligation right now is to protect the public and to punish you for what you have done. And so, ultimately, I am prepared to sentence you.

**{¶18}** The court then proceeded to sentence Blackburn to the aggregate sentence of eight years in prison and a mandatory three years of postrelease control.

**{¶19}** It is from this judgment that Blackburn appeals. Blackburn's first two assignments of error are related, and thus, will be addressed together.

<u>Increase in Sentence after Capias</u>

**{¶20}** In his first two assignments of error, Blackburn argues that his plea was not knowingly, voluntarily, and intelligently entered into because his plea was "premised on

the court's representation to [him], immediately prior to his plea, that the court would be looking to a sentence in the range of 2 – 4 years." He maintains that the trial court should have sentenced him to the "stated range" or permit him to withdraw his plea. The record shows that Blackburn never moved to withdraw his guilty plea.

{¶21} A plea agreement is a contract between the prosecution and a criminal defendant and is governed by principles of contract law. *State v. Adkins*, 161 Ohio App.3d 114, 2005-Ohio-2577, 829 N.E.2d 729 (4th Dist.). If one side breaches the agreement, the other side is entitled to rescission or specific performance. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *State v. Layman*, 2d Dist. No. 22307, 2008-Ohio-759. The Due Process Clause of the Fourteenth Amendment requires that any plea of guilty or no contest in a criminal case must be entered knowingly, intelligently, and voluntarily. *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996).

{¶22} Generally, when a trial court promises a certain sentence, the promise becomes an inducement to enter a plea, and unless that sentence is given, the plea is not voluntary. *Layman*, citing *State v. Triplett*, 8th Dist. No. 69237, 1997 Ohio App. LEXIS 493 (Feb. 13, 1997); *State v. Bonnell*, 12th Dist. No. CA2001-12-094, 2002-Ohio-5882. But when a trial court allows a defendant to go free on bond after the plea hearing and warns the defendant of the "dire consequences" he could face if he fails to appear for sentencing, reviewing courts have held that the trial court is not obligated to impose the promised sentence. *Layman* at ¶ 9, citing *State v. Price*, 1st Dist. No. C-030262, 2003-Ohio-7109.

**{¶23}** In *Price*, the court concluded that the defendant's failure to appear for sentencing (he had absconded for nine months) voided the agreement that the sentence would be limited to six years. The First District put great weight on the fact that the defendant was warned by the trial judge that he would face harsh consequences should he fail to appear for sentencing. It stated, "[a]fter accepting the guilty plea, the trial court informed Price that 'because of your cooperation, I'll go along and leave you out on bond. Make sure you cooperate with probation. Above all else, make sure you're back here [for sentencing], or things can go down hill quickly for you.'" *Id.* at ¶ 4. The First District further explained, "Price, as the party who breached the plea agreement, was not entitled to enforcement of the six-year agreed sentence. * * * [A] defendant[']s failure to appear for sentencing voids the terms of an agreed sentence, where, as here, he had been warned of the serious consequences for failing to appear." *Id.* at ¶ 3, 14.

**{¶24}** We find this case to be on point with *Price*. Although it is not good practice for a trial court to be involved in plea negotiations,[1] we conclude that, in this

---

[1] *See State v. Byrd*, 63 Ohio St.2d 288, 407 N.E.2d 1384 (1980). In *Byrd*, the Ohio Supreme Court "strongly discourage[d] judge participation in plea negotiations," explaining:

> There are a number of valid reasons for keeping the trial judge out of the plea discussions, including the following: (1) judicial participation in the discussion can create the impression in the mind of the defendant that he would not receive a fair trial were he to go to trial before this judge; (2) judicial participation in the discussions makes it difficult for the judge objectively to determine the voluntariness of the plea when it is offered; (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report; and (4) the risk of not going along with the disposition apparently desired by the judge may seem so great to the defendant that he will be induced to plead guilty even if innocent.

case, the trial court repeatedly warned Blackburn that if he did not show up at sentencing, he would face harsh consequences. The trial court told Blackburn that it had other defendants before it who it had "given an opportunity to say goodbye to their families" and those defendants did not come back for sentencing, and it "sentenced them very harshly as a result of that." The trial court also warned Blackburn that if she gave him the opportunity to go free on bond and did not come back for sentencing, it would "punish [him] significantly for that."

{¶25} Moreover, at the plea hearing, the trial court clearly advised Blackburn of the maximum penalty that he could receive for each offense. Defense counsel also stated at the hearing that Blackburn

> knows from my conversation with him that it's a 16-year result, because if he — if you're kind enough to give him this opportunity and he doesn't come back, or picks up new charges or uses drugs, the two felony 2s have a potential range of two to eight years, and eight and eight consecutive is how I'm getting the sixteen. And he's aware of that.

{¶26} Accordingly, based on the record of this case, we find no error on the part of the trial court for failing to give Blackburn the opportunity to withdraw his plea or failing to sentence him to the "stated range" of two to four years that it had told him it was "considering."

{¶27} Blackburn's first and second assignments of error are overruled.

Consecutive Sentences

---

*Id.* at 293, quoting the commentary to Section 3.3(a) of the ABA standards, at page 73.

**{¶28}** In his third assignment of error, Blackburn argues that the trial court erred when it sentenced him to consecutive prison terms. We agree. Although not argued by Blackburn, we find that the trial court failed to comply with the sentencing provisions of R.C. 2929.14(C)(4) as renumbered and revived by H.B. 86, and thus, his consecutive sentences are contrary to law.

**{¶29}** An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Johnson*, 8th Dist. No. 97579, 2012-Ohio-2508, ¶ 6, citing State *v. Hites*, 3d Dist. No. 6-11-07, 2012-Ohio-1892, ¶ 7. Specifically, R.C. 2953.08(G)(2) provides that our review of consecutive sentences is not an abuse of discretion. An appellate court must "review the record, including the findings underlying the sentence or modification given by the sentencing court." *Id.* If an appellate court clearly and convincingly finds either that (1) "the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)]" or (2) "the sentence is otherwise contrary to law," then "the appellate court may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing." *Id.*

**{¶30}** Blackburn was sentenced in December 2011. H.B. 86 took effect on September 30, 2011. The General Assembly expressly provided in Section 4 of H.B. 86: "The amendments * * * apply to a person who commits an offense specified or penalized under those sections on or after the effective date of this section[.]" Therefore, the trial court was required to sentence Blackburn according to the revisions implemented in H.B. 86.

{¶31} One of the noteworthy changes to the felony sentencing laws concerns the purposes of felony sentencing, as stated in R.C. 2929.11(A). The two primary purposes of felony sentencing remain "to protect the public from future crime by the offender and others and to punish the offender * * *." *Id.* These goals, however, are to be realized "using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." *Id*. This mandate to utilize the minimum sanctions the court determines necessary is a new provision, added by H.B. 86.

{¶32} The provisions of Section 11 of H.B. 86 explain the General Assembly's intent with regard to reviving findings a trial court must make before imposing consecutive sentences:

> In amending division (E)(4) of section 2929.14 and division (A) of section 2929.41 of the Revised Code in this act, it is the intent of the General Assembly to simultaneously repeal and revive the amended language in those divisions that was invalidated and severed by the Ohio Supreme Court's decision in *State v. Foster* [109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470]. The amended language in those divisions is subject to reenactment under the United States Supreme Court's decision in *Oregon v. Ice* [555 U.S. 160, 129 S.Ct. 711 (2009)], and the Ohio Supreme Court's decision in *State v. Hodge*, [128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768] and, although constitutional under *Hodge*, *supra*, that language is not enforceable until deliberately revived by the General Assembly.

{¶33} R.C. 2929.14(C)(4), as revived, now requires that a trial court engage in a three-step analysis in order to impose consecutive sentences. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." *Id.* Next, the trial court must find that "consecutive sentences

are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Finally, the trial court must find that at least one of the following applies: (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *Id.*

{¶34} In each step of this analysis, the statutory language directs that the trial court must "find" the relevant sentencing factors before imposing consecutive sentences. R.C. 2929.14(C)(4). In making these findings, a trial court is not required to use "talismanic words to comply with the guidelines and factors for sentencing." *State v. Brewer*, 1st Dist. No. C-000148, 2000 Ohio App. LEXIS 5455, *10 (Nov. 24, 2000). But it must be clear from the record that the trial court actually made the findings required by statute. *See State v. Pierson*, 1st Dist. No. C-970935, 1998 Ohio App. LEXIS 3812 (Aug. 21, 1998). A trial court satisfies this statutory requirement when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria. *See State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999).

{¶35} Notably, however, the General Assembly deleted R.C. 2929.19(B)(2)(c) in H.B. 86. This was the provision in S.B. 2 that had required sentencing courts to state their *reasons* for imposing consecutive sentences on the record. Accordingly, a trial court is not required to articulate and justify its findings at the sentencing hearing. A trial court is free to do so, of course. But where, as here, there is no statutory requirement that the trial court articulate its reasons, it does not commit reversible error if it fails to do so, as long as it has made the required findings.

{¶36} Here, the trial court failed to make any express findings as required under R.C. 2929.14(C)(4). The trial court did recite Blackburn's prior criminal history, which could equate to making two of the findings, namely (1) that "consecutive service is necessary to protect the public from future crime or to punish the offender," and (2) that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. The trial court also stated that its "highest obligation right now is to protect the public and punish you for what you have done," but a trial court is required to consider these factors in every sentencing under R.C. 2929.11. The trial court, however, failed to make the mandatory finding that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."

{¶37} Accordingly, the trial court's judgment in Case No. CR-544142 sentencing Blackburn to concurrent terms of four years for burglary and 18 months for grand theft is affirmed. Further , the trial court's judgment in Case No. CR-547001 sentencing Blackburn to four years for burglary is also affirmed. But the portion of the trial court's

judgment in each case ordering that the two cases be served consecutive to one another is vacated. This case is remanded to the trial court to consider whether consecutive sentences are appropriate under H.B. 86, and if so, to enter the proper findings on the record.

**{¶38}** Convictions affirmed, sentence affirmed in part, vacated in part; case remanded for limited resentencing as instructed by this court.

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

PATRICIA ANN BLACKMON, A.J., and
MELODY J. STEWART, J., CONCUR