[Cite as *State v. Castleberry*, 2016-Ohio-1539.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103124**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DESHAWN CASTLEBERRY

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-590393-A

**BEFORE:** Jones, A.J., E.A. Gallagher, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** April 14, 2016

**ATTORNEY FOR APPELLANT**

Paul A. Mancino
75 Public Square Bldg., Suite 1016
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Andrew J. Santoli
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., A.J.:

{¶1} Defendant-appellant, Deshawn Castleberry, appeals the trial court's decision to deny his presentence motion to withdraw his guilty plea and his sentences for attempted murder, felonious assault, and having weapons while under disability. We affirm.

## I. Procedural History and Facts

{¶2} In 2014, Castleberry was charged with two counts of attempted murder with one-, three-, and seven-year firearm specifications; two counts of felonious assault with one-, three-, and seven-year firearm specifications; and one count of having weapons while under disability. Castleberry was referred to the court psychiatric clinic and was found competent to stand trial.

{¶3} After extensive pretrial negotiations with the state of Ohio, Castleberry pleaded guilty to one count of attempted murder with one-, three-, and seven-year firearm specifications; one count of felonious assault with a three-year firearm specification; and one count of having weapons while under disability. The trial court referred Castleberry for a presentence investigation report and a court psychiatric mitigation report.

{¶4} The day before the sentencing hearing, Castleberry's counsel filed a motion to withdraw his guilty pleas. At the sentencing hearing, the trial court heard from the parties regarding the motion and subsequently denied it.

{¶5} Officer John Lyons of the Cleveland Police Department spoke at the sentencing hearing. Officer Lyons and his partner responded to a call for males fighting. They knew Castleberry from previous incidents. The

officers were in full uniform in a marked police car when they pulled up to the scene. Officer Lyons exited his cruiser and called out, "Hey, Mr. Castleberry," in a "nonthreatening" manner. Without hesitation, Castleberry took one step back, said "What," pulled out his gun and opened fire. Officer Lyons told the court:

> His first shot hit me right here in the chest. I immediately started moving for cover, as Mr. Castleberry kept tracking me, and he kept shooting at me. So, then, luckily, my partner was able to dive behind cover, and then he popped up, Mr. Castleberry, and engaged my partner. And they exchanged gun fire * * * .

{¶6} Lyons's partner, Officer Matthew Pollack, likewise told the court that he and Officer Lyons approached Castleberry in a nonthreatening manner and the shooting was completely unprovoked. Officer Pollack explained:

> My partner was struck, and I was able to get cover and return fire. [Castleberry] started shooting at me. He then got behind cover and he continued to engage me. We were shooting at each other for a couple — for a short period of time before he disappeared into the backyards. At which time, we regrouped, took up cover positions, and waited for back-up.

> I just wanted to say that the whole incident — we are very lucky that it worked out the way it did. We were police officers and not normal citizens walking down the street. Unprovoked, Mr. Castleberry almost took myself and my partner away from our children, our wives, our loved ones. It very easily could have went in a bad way. I can't see how somebody who is placed in a civilized society can do that, at the drop of a

hat.

{¶7} The trial court imposed an aggregate sentence of 25 years in prison.

{¶8} Castleberry filed a timely notice of appeal and raises eight assignments of error, some of which will be combined for review. Further facts will be discussed under the appropriate assignments of error.

## II. Assignments of Error

I. Defendant was denied due process of law when the court refused to allow defendant to withdraw his pleas.

II. Defendant was denied due process of law when the court overruled defense counsel's motion to withdraw.

III. Defendant was denied his Sixth Amendment right of counsel of choice when the court refused to grant a continuance to defendant.

IV. Defendant was denied his Sixth Amendment rights when the court based its sentence on matters neither alleged in the indictment nor admitted at the time of the plea.

V. Defendant was denied due process of law when the court rotely [sic] imposed a consecutive sentence without proper consideration of any of the underlying facts which was based only on a plea of guilty.

VI. Defendant was denied due process of law when the court imposed consecutive sentences without the total mandated findings.

VII. Defendant was subjected to unconstitutional multiple punishments when the court failed to merge the firearm count and the firearm specifications.

VIII. Defendant was denied due process of law when consecutive sentences were imposed without appropriate findings.

## III. Law and Analysis

{¶9} The first three assignments of error will be considered together because they challenge the trial court's denial of Castleberry's motions to withdraw his guilty plea and to retain new counsel.   For the reasons that follow, Castleberry's arguments are without merit.

{¶10} A brief explanation of the procedural history preceding the trial court's denial of Castleberry's motions is warranted.   The day before the sentencing hearing was to take place, Castleberry's attorney filed a motion to withdraw, stating that Castleberry had fired him.   The court began the sentencing hearing by addressing this motion. Castleberry told the court that he was trying to retain a new lawyer, the lawyer had been to see him, and his family was going to meet with the lawyer "next Saturday." Castleberry said he wanted to withdraw his plea so he could get a second statement from one of his witnesses.   Castleberry also wanted a lawyer "that would fight for me, and things of that nature" and "to go to trial.   I take, you know, full responsibility of my actions and this accident.   I just wanted to go to trial, and maybe things will come out different."

{¶11} Castleberry claimed that current counsel told him he could withdraw his plea before the sentencing hearing:   "He [the current attorney] was like, look, if you just take the plea now, and if you decided that you didn't want it, you could withdraw it." Counsel denied the allegation, but stated:

> Your Honor, I think we did have a conversation.   I think he did feel that
>
> there was some pressure on him.   We had spoken about a plea on several

occasions, and I had been to see him in the jail multiple times. I know that we did speak in the bullpen before and after [the plea hearing], but at no time did I say that [withdrawing your plea] is a way to buy yourself more time or anything like that. Or that you could freely be able to vacate your plea on the eve of sentencing, if you decided to change your mind.

{¶12} Counsel stated that he had taken a statement from Castleberry's witness, but his client wanted another statement because, according to Castleberry, the witness wanted to change his statement to something "more exculpatory." This witness, however, never contacted counsel to make the statement.

{¶13} Defense counsel stated that the delay in filing the motion to withdraw was his fault, not his client's, because he (the attorney) was waiting for confirmation that new counsel had been retained. The confirmation was not forthcoming, so counsel filed the motion to withdraw on the eve of sentencing. Counsel asked for a continuance "so they [Castleberry's family] maybe could hire counsel. It sounds as though they may not have understood the urgency of getting this done prior to the sentencing date. And Mr. Castleberry seemed to believe — and I'm sure he expressed it to his family — that vacating the plea would not be an issue."

{¶14} The court questioned Castleberry and confirmed that during the plea hearing Castleberry understood the serious nature of the allegations, the charges against him, had consulted with his attorney about the charges, understood the potential penalties and his rights, had the opportunity to inquire about anything he did not understand, and nothing

was promised in exchange for his plea.

{¶15} Castleberry claimed that his fiancée was going to give the new attorney a retainer on "Saturday," but admitted that the attorney knew the sentencing date and had agreed to take the case only if Castleberry successfully withdrew his plea.

{¶16} In denying the motions, the court stated:

> The court has considered carefully all of this information, and the defendant has not provided enough grounds for me to grant his motion to vacate the plea. I'm not going to do that at this time. I would like to go forward with sentencing. I have received all of the mitigation evaluations, the presentence investigation report, the victims are present in court here today.
>
> It is clear that [proposed new counsel], you know, has made no effort to provide any information to this court. We tried calling [proposed new counsel] all morning, and that it appears his retention was contingent upon the plea being vacated. There is really no reason to vacate the plea that I've heard of. The defendant understood everything, he knew what he was doing, understood his rights, and entered a guilty plea. That whatever information he got from a witness in jail is not going to affect the facts in this case to the point that he's actually innocent. And so, the court is going to deny that motion.

{¶17} It is with these facts in mind that we review the first three assignments of error.

{¶18} A motion to withdraw a guilty plea is governed by the standards set forth in Crim.R. 32.1, which provides that a motion to withdraw a plea of guilty or no contest may

be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

{¶19} Generally, a presentence motion to withdraw a guilty plea should be freely and liberally granted. *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992). However, a defendant does not have an absolute right to withdraw a plea prior to sentencing, and it is within the sound discretion of the trial court to determine what circumstances justify granting such a motion. *Id.* at 527; *State v. Tucker*, 8th Dist. Cuyahoga No. 97981, 2012-Ohio-5067, ¶ 5-6. In ruling on a presentence motion to withdraw a plea, the court must conduct a hearing and decide whether there is a reasonable and legitimate basis for withdrawal of the plea. *Xie* at *id.*

{¶20} In *State v. Peterseim*, 68 Ohio App.2d 211, 214, 428 N.E.2d 863 (8th Dist.1980), this court set forth the standard for determining whether the trial court has abused its discretion in denying a presentence motion to withdraw a plea. A trial court will not have abused its discretion in denying such a motion if: (1) the accused is represented by "highly competent counsel," (2) the accused was afforded a full hearing, pursuant to Crim.R. 11, before the accused entered the plea, (3) the accused is given a complete and impartial hearing on the motion, and (4) the record shows that the court gave full and fair consideration to the motion. *Id.*

{¶21} In this case, the *Peterseim* criteria were met. Castleberry does not allege that he received ineffective assistance of counsel or that the court failed to comply with

Crim.R. 11 in accepting his guilty pleas. The trial court also held a full hearing prior to denying the motion at which it gave Castleberry, his attorney, and the state ample time to outline their positions. The court went the extra step of trying to contact the attorney Castleberry wanted to hire, but the court was unable to reach the attorney. The record also shows that the trial court gave full and fair consideration of Castleberry's request. Therefore, the trial court did not abuse its discretion in denying Castleberry's motion to withdraw his plea.

{¶22} A trial court's decision whether to grant a continuance to retain new counsel is also reviewed for an abuse of discretion. *State v. Dukes*, 34 Ohio App.3d 263, 265, 518 N.E.2d 28 (8th Dist.1986). "An accused does not have an absolute right to a continuance upon the withdrawal or discharge of counsel and that the decision to grant such a continuance rests with the sound discretion of the trial court." *Id.* In *Dukes*, this court concluded that the defendant did not receive effective assistance of counsel where the trial court had denied a motion for a continuance. Two weeks prior to trial, defense counsel filed a motion to withdraw as counsel. The trial court did not rule on the motion until the morning of trial and refused to grant a continuance. This court noted that the defendant failed to cooperate with counsel to prepare a defense, fired counsel based on mistrust, and counsel had acknowledged that the defendant's mistrust had impeded her ability to prepare a defense. Further, the defendant's basis for mistrusting his counsel was not groundless. *Id.* at 265-266. This court concluded that, on these facts, the failure to grant a continuance created a situation where the defendant did not receive

effective assistance of counsel. *Id.*

{¶23} In contrast, in this case, Castleberry has not claimed that he received ineffective assistance of counsel. Moreover, the motion to withdraw was filed on the eve of sentencing. Although Castleberry indicated he wanted to retain new counsel, the attorney he wanted to hire did not file a notice of appearance or appear at the sentencing hearing. Castleberry claims he lacked confidence in his attorney because counsel failed to secure a second statement from a witness, but did not allege a lack of trust. Counsel also did not allege that Castleberry failed to cooperate with him.

{¶24} This court has stated that "[a] lack of rapport is not sufficient to constitute a total breakdown when it does not inhibit the attorney from both preparing and presenting a competent defense." *State v. Davis*, 8th Dist. Cuyahoga No. 101208, 2014-Ohio-5144, ¶ 13, citing *State v. Lewis*, 11th Dist. Lake No. 2012-L-074, 2013-Ohio-3974, ¶ 48. In light of these facts, the trial court did not abuse its discretion in denying Castleberry's motion to withdraw his plea, for his attorney to withdraw, or for a continuance. The first, second, and third assignments of error are, therefore, overruled.

{¶25} In the fourth, fifth, sixth, and eighth assignments of error, Castleberry claims that the trial court incorrectly imposed a 25-year prison sentence without making the appropriate findings to support such a lengthy sentence.

{¶26} R.C. 2953.08(G)(2) provides, in part, that when reviewing felony sentences, the appellate court's standard for review is not whether the sentencing court abused its discretion; rather, if this court "clearly and convincingly" finds that (1) "the record does

not support the sentencing court's findings under R.C. 2929.14(C)(4)," or that (2) "the sentence is otherwise contrary to law," then we "may increase, reduce, or otherwise modify a sentence * * * or [a reviewing court] may vacate the sentence and remand the matter to the sentencing court for re-sentencing."

{¶27} A sentence is not clearly and convincingly contrary to law

where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies postrelease control, and sentences a defendant within the permissible statutory range.

*State v. Bryant*, 8th Dist. Cuyahoga No. 101531, 2015-Ohio-2263, ¶ 10, citing *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 10.

{¶28} R.C. 2929.11(A) provides that

[t]he overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources.

{¶29} Under R.C. 2929.12(A), trial courts must consider a nonexhaustive list of factors, including the seriousness of the defendant's conduct, the likelihood of recidivism, and "any other factors that are relevant to achieving those purposes and principles of sentencing."

{¶30} To support the imposition of consecutive sentences, R.C. 2929.14(C)(4) requires that a trial court engage in a three-step analysis. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." *Id.* Next, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Finally, the trial court must find that at least one of the following applies: (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *Id*.

{¶31} In order to impose consecutive terms of imprisonment, a trial court must both (1) make the statutory findings mandated for consecutive sentences under R.C. 2929.14(C)(4) at the sentencing hearing, and (2) incorporate those findings into its sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus.

{¶32} In sentencing Castleberry to a 25-year term in prison, the court expressly

stated that it had considered all of the principles and purposes of felony sentencing and all of the appropriate recidivism and seriousness factors. The court also considered the court psychiatric clinic mitigation evaluation, and found that Castleberry "imposed a significant threat to the well-being of folks in your neighborhood and our community." The court noted that at the time of the offense, Castleberry was high on PCP and marijuana, and had admitted daily use of PCP since age 15. The court further noted that although Castleberry had received drug treatment, he continued to use drugs.

{¶33} The court reviewed Castleberry's extensive criminal history, dating back to when he was a juvenile and including over a dozen convictions and numerous prison sentences. Finally, in turning to the instant crime, the court stated:

And when you do see the police, your first reaction is to shoot them. Multiple attempts to shoot them. But for a protective vest, Officer Lyons is dead. But for your lack of aim, Officer Pollack is dead. You're fortunate that you were not dead. [The] neighbors are fortunate that no one else is dead. Because if that was anyone else, regardless of who it was that came up and said your name, you [would have] turned around and [shot] them, by your own admission.

{¶34} In imposing consecutive sentences the court found the following:

So there is nothing that the Court could do to protect our community other than to separate you from the community. You just — your chances at rehabilitating yourself have not taken one bit.

So I'm going to find that it is necessary to protect our community and

punish you with consecutive sentences based on all of these facts. That it is not disproportionate to impose consecutive sentences, and that your criminal history shows that consecutive terms are necessary or needed to protect our public.

**{¶35}** The trial court is required to find the relevant sentencing factors before imposing a consecutive sentence, but the court does not need to use "talismanic words." *State v. Blackburn*, 8th Dist. Cuyahoga Nos. 97811 and 97812, 2012-Ohio-4590, ¶ 34. The trial court satisfies the requirement when the record reflects that the trial court engaged in the proper required analysis and selected the appropriate statutory criteria. *State v. Lebron*, 8th Dist. Cuyahoga No. 97773, 2012-Ohio-4156, ¶ 11.

**{¶36}** On this record, Castleberry's sentence was not contrary to law and the trial court made the appropriate findings to justify its sentence. Accordingly, the fourth, fifth, sixth, and eighth assignments of error are overruled.

**{¶37}** In the seventh assignment of error, Castleberry argues that the trial court erred in failing to merge the having weapons while under a disability count with the seven-year firearm specification. This argument is also without merit.

**{¶38}** Castleberry was sentenced to a total of 25 years in prison as follows:

Count 1: 10 years (1 year firearm, 3 year firearm, 7 year firearm specs merge) gun specs to run prior to and consecutive with Count 1 for a total of 17 years. Count 4: 5 years; 3 year firearm spec to run prior to and consecutive with Count 4 for a total of 8 years. Count 5: 36 months, to run

concurrent to Counts 1 and 4.   Counts 1 and 4 to run consecutive to each other.

Sentencing Journal Entry dated May 19, 2015.

{¶39} Castleberry claims that it was unlawful for the trial court to run Count 5, having weapons while under disability, consecutive to Count 1, attempted murder, and Count 4, felonious assault.   But Castleberry is mistaken — the trial court ran Count 5 *concurrent* with Counts 1 and 4.

{¶40} Even if the court had decided to run Count 5 consecutive to Counts 1 and 4, the court would have been within its power to do so.   The statute Castleberry cites, R.C. 2941.25(A), deals with allied offenses of similar import.   But a firearm specification is not an offense, it is a penalty enhancement.   *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, paragraph one of the syllabus (holding that a firearm specifications is a penalty enhancement, not a criminal offense as that term is used in R.C. 2941.25); *see also State v. Adams*, 1st Dist. Hamilton No. C-120059, 2013-Ohio-926, ¶ 34.   A firearm specification is a sentencing provision that requires the enhanced penalty upon certain findings;   it is an enhanced penalty attendant to a criminal offense and is not an offense subject to R.C. 2941.25.   *State v. Roper*, 9th Dist. Summit Nos. 26631 and 26632, 2013-Ohio-2176, ¶ 10.

{¶41} In light of the above, the seventh assignment of error is overruled.

{¶42} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
MARY J. BOYLE, J., CONCUR